**UNITED STATES of America, Appellee,**

v.

**Samuel MARSHALL and William Hazel Peterkin, Jr., Appellants.**

**Nos. 644 and 645, Dockets 34163–34164.**

United States Court of Appeals, Second Circuit.

Argued March 24, 1970.

Decided June 1, 1970.

David G. Trager, Asst. U.S. Atty. (Edward R. Neaher, U.S. Atty., for the Eastern District of New York, on the brief), for appellee.

David N. Ellenhorn, New York City (Milton Adler, New York City, The Legal Aid Society, on the brief), for appellants.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMEN-FELD, District Judge.*

LUMBARD, Chief Judge.

Samuel Marshall and William Peterkin appeal from their convictions by a jury in the Eastern District of New York of bank robbery and aggravated bank robbery, 18 U.S.C. § 2113(a) and (d), and from their respective concurrent sentences under the same subsections.[1] We find no error in the convictions under section 2113(a) and affirm. However, we vacate the convictions under section 2113(d), since it was improper to sentence Marshall and Peterkin under both subsections [2] and because there was plain error in the trial judge's charge as to that count.

The indictment contained two counts. The first charged a robbery of the Nassau Trust Company branch in Glen Cove, Long Island, on July 31, 1968. This count carried a maximum penalty of a $5,000 fine and 20 years in prison under section 2113(a). The second count charged that the lives of bank employees and others present at the scene were put in jeopardy during the robbery, a charge which was based on testimony that Marshall brandished a silver revolver and Peterkin a sawed-off shotgun while rob-

---

* Sitting by designation.

1. Although appellants were sentenced on both counts, Marshall to terms of 12 years and Peterkin to terms of 15 years, our decision to vacate the counts charging § 2113(d) violations does not affect the sentences, since both men were given sentences well within the maximum provided by § 2113(a).

2. Ordinarily a conviction under § 2113(a) merges into a conviction under § 2113(d), and the government concedes that sentence should have been imposed on one count only. See United States v. Nirenberg, 242 F.2d 632 (2d Cir. 1957).

bing the bank. This additional element of the crime permits penalties up to a $10,-000 fine and 25 years' imprisonment under section 2113(d).[3]

The government's proof showed that on July 31, 1968, the appellants walked into the bank at 10 a. m. Marshall asked to open an account and was referred to Mrs. Elva Hoops, a bank employee. While Mrs. Hoops interviewed Marshall and gave him signature cards to fill out, Peterkin remained in the background. Marshall signed the signature cards with an assumed name, pulled his revolver, and announced that he was going to rob the bank. Mrs. Hoops led Marshall to a teller's window, and simultaneously Peterkin produced his sawed-off shotgun and came forward with a canvas bag.

Marshall and Peterkin took $8,200 in cash from the teller's drawer, left the bank, and sped off in a getaway car which had been stolen the night before. They drove to an intersection in Glen Cove (where they had planned a rendezvous), abandoned the stolen car, and were picked up by a second car which had been waiting for them.

Appellants concede that the government's case, which included eyewitness identifications, testimony by a coconspirator, Peterkin's incriminating admissions, and expert testimony concerning fingerprints and handwriting, contained abundant evidence for conviction on the charge of simple bank robbery under section 2113(a). However, they attack their convictions for aggravated robbery under section 2113(d) on two grounds. First, they argue that the absence of

any proof that the guns used during the robbery were loaded precluded submitting any charge of a violation of section 2113(d) to the jury. Second, they contend that the trial judge's section 2113 (d) charge that a person is put "in jeopardy" when he is exposed to the "risk or fear of injury" was plain error.

## I. *The Necessity of Proof That the Guns Were Loaded*

The government concedes that there was "no direct or circumstantial evidence that either the revolver or the shotgun was loaded during the actual robbery." Thus, we are faced with the question, of first impression in this circuit, whether the government can satisfy the "in jeopardy" element of section 2113(d), and thereby possibly subject a defendant to the additional penalties of that subsection, without showing that the guns used during the robbery were loaded.

In a number of recent opinions, other circuits have affirmed convictions under section 2113(d) without proof that the weapons used were loaded, but the bases for the affirmances have varied.

One circuit has held that the highly charged atmosphere of a robbery and the possibility of some physical action by employees or bystanders to interrupt the weapon-bearing robbers creates a situation in which lives are "in jeopardy" as a matter of law. Baker v. United States, 412 F.2d 1069, 1072 (5th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S. Ct. 583, 24 L.Ed.2d 509 (1970). This rationale eliminates the need for finding that a bank robber's gun was loaded,

---

3. § *2113. Bank robbery and incidental crimes*

(a) Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; * * *
Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

* * * * * *

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

since proof that a gun was used is sufficient proof that the highly charged atmosphere existed, and this in turn is held legally sufficient to satisfy section 2113 (d).

A more common approach, particularly in cases where there is no proof to indicate that the guns carried during a robbery were unloaded, is to allow the jury to infer that the guns were in fact loaded. The courts invoking this rationale reason that when "a robber displays a gun to back up his demands, he wants the victim to believe that it is loaded, and the fact-finder may fairly infer that it was." Wagner v. United States, 264 F.2d 524, at 530 (9th Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). See also Morrow v. United States, 408 F.2d 1390 (8th Cir. 1969) ; Lewis v. United States, 365 F.2d 672 (10th Cir. 1966), cert. denied, 386 U.S. 945, 87 S.Ct. 978, 17 L.Ed.2d 875 (1967).

■■ We adopt the latter approach and hold that the jury may infer that a gun used during a robbery was loaded in the absence of direct proof that the chambers contained bullets. The act of threatening others with a gun is tantamount to saying that the gun is loaded and that the gun wielder will shoot unless his commands are obeyed. Furthermore, the use of an unloaded gun to rob a bank would be a very hazardous venture for the robber. He would be at a total disadvantage should armed bank guards or police interrupt him. In our opinion, it is so unlikely that a bank robber who purports to be armed would undertake this risk that an inference that the gun was loaded is justified. In Baker v. United States, *supra,* the Fifth Circuit adopted the *per se* rule previously described so that the government's heavy burden of proof would not render subsection (d) of section 2113 ineffectual. We believe that permitting the inference that the gun was loaded is more in keeping with reality, since the inference is based on the overwhelming probabilities. More-over, this approach still gives subsection (d) of section 2113 vitality.

## II. *The Trial Judge's Charge on the Meaning of "In Jeopardy"*

■ There was, as we have stated, no direct proof that either Marshall's revolver or Peterkin's shotgun was loaded. There was, however, testimony by John Bjorklund, Jr., a special agent of the F.B.I., that when he told Peterkin that he was lucky that no one was killed, Peterkin stated "I took the shell out of the chamber so nobody could get hurt while I was in the bank." Although the jury might have found that the guns of both men were unloaded during the robbery, it certainly was not bound to give credence to Peterkin's statement, which was entirely self-serving. And, we note that neither Marshall nor Peterkin took the stand in order to press this claim. If the trial judge had properly charged the jury as to the meaning of "in jeopardy" as it appears in section 2113(d), and that it could infer from all the circumstances that both guns were loaded, we would affirm the convictions under section 2113(d).

The trial judge, however, did not so charge the jury. Rather, he told them that a "dangerous weapon" includes "a firearm * * * capable of firing a bullet or other ammunition" and that "to put in jeopardy * * * means to expose [a] person to the risk *or fear* of death or injury by the use [of a dangerous weapon]" (emphasis added). He later summarized agent Bjorklund's testimony concerning Peterkin's statement that the shotgun was unloaded.

■ Appellants' contention is that this charge was error insofar as the jury could have found that "fear of death or injury," rather than an objective state of danger, constituted "jeopardy." Cf. United States v. Donovan, 242 F.2d 61 (2d Cir. 1957) (interpretation of "jeopardy" provision of 18 U.S.C. § 2114). If we did not require a finding that lives were objectively in danger, it would be impossible to dis-

tinguish subsection (d) of section 2113 from subsection (a), which prohibits robbery "by force or violence, or by intimidation."

Appellants never objected to the charge as given at trial. Thus, we must determine at this time whether the charge constituted "plain error" under rule 52 (b), Federal Rules of Criminal Procedure. In light of the permissible inference that we have said may be used to find that the guns used during a robbery are loaded, we would be quick to find harmless error here if we were convinced that the jury would have found that the guns were loaded and accordingly, that lives had been "in jeopardy." But Bjorklund's testimony, which the trial judge reiterated during the charge, was at least some evidence tending to show that the guns were unloaded, and we cannot say beyond a reasonable doubt that the jury would have found a violation of section 2113(d) on a charge which properly defined the meaning of "in jeopardy." Therefore, we vacate the convictions under subsection (d); as stated above, we find no other error and affirm the convictions under section 2113(a).

■ Finally, appellants argue that since we have vacated the convictions under section 2113(d), we must remand for resentencing on the theory that the sentences imposed on both of them were influenced by the guilty verdicts on the more serious aggravated robbery charge. We do not agree. At the time of sentencing, the trial judge demonstrated no misapprehension of the facts; indeed, he noted that he had considered Peterkin's statement about removing the shell from the chamber. The sentences imposed were well within the maximum allowable under both subsections (a) and (d). There is no reason to believe that the sentences imposed would have been any different had the jury acquitted under subsection (d) and convicted under subsection (a).

We have also considered appellants' arguments that statements made to the F.B.I. were involuntary and that the judge improperly charged the jury on the standards of reasonable doubt, and we find them to be without merit.

The convictions under section 2113(d) are vacated; the convictions under section 2113(a) are affirmed. As the sentences imposed were well within the limits set forth in section 2113(a), there is no need for resentencing.